AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 1:22-MJ-00310 |
| JONATHAN GROSS | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  November 3-5, 2021,  in the county of  Hamilton  in the
 Southern  District of  Ohio , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to Commit an Offense Against the United States |

This criminal complaint is based on these facts:

    See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

William Crayner, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.
**via electronic means, specifically Facetime video.**

Date:  May 31, 2022 

*Judge's signature*

City and state:  Cincinnati, Ohio   Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE CRIMINAL COMPLAINT OF:<br><br>JONATHAN GROSS, ANTONIO JACKSON, AND DAMIEN BAXTER | Case No.   **1:22-MJ-00310** |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, William Crayner, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I submit this affidavit in support of a criminal complaint and arrest warrant against JONATHAN GROSS, ANTONIO JACKSON, and DAMIEN BAXTER for a violation of 18 U.S.C. § 371 (Conspiracy to Commit an Offense Against the United States).

2. I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been so employed since December 2018. As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, in Glynco, Georgia. I also graduated from the ATF Special Agent Basic Training Academy, in Glynco, Georgia, in June of 2019.

3. In my career with ATF, I have been assigned to the Cincinnati Field Office in the Southern Judicial District of Ohio. Prior to my employment with ATF, I was a member of the United States Secret Service in Washington D.C. where I served as a member of the Uniformed Division under the Presidential Protective Division. I was employed in that capacity from July of 2010 to February of 2015. I was also a member of the Carmel Police Department in Carmel, IN

from February 2015 to December of 2018. I was assigned to the Operations Division at the Carmel Police Department and took part in various criminal investigations during my tenure. I have received additional training in several areas of law enforcement, including but not limited to gang investigations, narcotics interdiction and investigation, and firearms interdiction and investigation. I am also a graduate of Purdue University where I received a bachelor's degree in Law and Society in 2008.

4. I have experience in the investigation, apprehension, and prosecution of individuals suspected of being involved in federal firearms and drug offenses. I have been trained by the ATF as a Firearms Interstate Nexus Expert and have examined many firearms in that capacity and have become familiar with where various firearms manufacturers manufacture, import and distribute their firearms for retail sale.

5. Through training and experience, I have become familiar with firearms trafficking investigations and the analysis of ATF Multiple Sale Reports,[1] ATF Trace Reports,[2] and Federal Firearms Licensee Acquisition & Disposition Records.[3] I am also experienced in analyzing ATF Trace Reports and identifying patterns and purchasing activity of suspected firearms traffickers. This includes the analysis of the number of days between the purchase of a firearm and the later date law enforcement authorities recover it, as well as examining relevant ATF Trace Reports

---

[1] A Federal Firearms Licensee (FFL) must complete (and submit to ATF) ATF Form 3310.4 – Report of Multiple Sale or Other Disposition of Pistols and Revolvers, commonly called an "ATF Multiple Sale Report," to provide information about a transaction in which an individual buys two or more pistols or revolvers at one time or within five consecutive business days.
[2] An ATF Trace Report provides information about a firearm's original purchaser and the circumstances in which the firearm was later recovered. A completed ATF Trace Report includes the identifying information for the firearm, including recovery and location date; the FFL that transferred the firearm; and the information related to the purchase of the firearm, which is obtained from the ATF Form 4473 – Firearms Transaction Record that the FFL provided to the ATF National Tracing Center.
[3] An FFL is required to maintain Acquisition and Disposition Records documenting all firearms that the FFL receives into, and distributes from, its inventory.

involving a specific purchaser or possessor, and/or the volume or make and model of particular firearms identified as being purchased by suspects.

6. The facts in this affidavit come from my personal observations, my training and experience, my review of reports and law enforcement databases, and information obtained from other agents and witnesses.

7. Because I am submitting this affidavit for the limited purpose of securing a criminal complaint and arrest warrants, I have not included every fact that I know about this investigation; I have set forth only those facts that I believe are necessary to establish probable cause to believe that GROSS, JACKSON, and BAXTER have violated 18 U.S.C. § 371.

## **APPLICABLE LAW**

8. As set out in more detail below, there is probable cause to believe that GROSS, JACKSON, and BAXTER have conspired to commit an offense against the United States in violation of 18 U.S.C. § 371. Specifically, there is probable cause to believe that the three men conspired to violate 18 U.S.C. § 922(a)(6) (False Statement During Purchase of a Firearm). The elements of a violation of 18 U.S.C. § 371 in that circumstance are:

   a. First, that two or more persons conspired, or agreed, to commit the crime of False Statement During Purchase of a Firearm, that is:

      a. To knowingly make a false oral or written statement to a federally licensed firearms dealer;

      b. Where the false statement was made in connection with the acquisition or attempted acquisition of a firearm; and

      c. Where the statement was intended or likely to deceive such firearms dealer with respect to a fact material to the lawfulness of the sale of the firearm to the defendant.

   b. Second, that the defendant knowingly and voluntarily joined the conspiracy; and

3

    c. Third, that a member of the conspiracy committed an overt act to effect the object of the conspiracy.

## PROBABLE CAUSE

### A. Introduction

9. ATF is investigating suspected firearms trafficking and illegal "straw" purchases[4] of firearms by of JONATHAN GROSS, ANTONIO JACKSON, and DAMIEN BAXTER. As I explain in more detail below, On November 3, 2021, BAXTER—who is prohibited from possessing firearms under Ohio law—directed JACKSON to have GROSS buy a Glock pistol for BAXTER. The next day, November 4, 2021, JACKSON tried to buy two pistols himself, including a Glock, but the sale was denied due to his recent drug-related arrests.

10. On November 5, 2021, JACKSON met up with GROSS, who is not prohibited from possessing firearms, and the two drove to Shoot Point Blank Cincy West, a federal firearms licensee (FFL). There, GROSS bought two Glock pistols and, at JACKSON's direction, three boxes of hollow-point ammunition. On the ATF Form 4473 that he filled out in connection with the transaction, GROSS represented that he was the true purchaser of the firearm. Less than an hour later, GROSS bought two more firearms at another FFL in Cincinnati.

11. That night, JACKSON told BAXTER via text that he had gotten "it," and BAXTER responded with a smiley face.

12. Less than a month later, when BAXTER was arrested in a car with two other men, he was found in possession of one of the Glocks GROSS had bought from Shoot Point Blank Cincy West. Another man in the same car possessed the second Glock GROSS had bought on

---

[4] A "straw" purchase is one in which the buyer, in violation of 18 U.S.C. § 922(a)(6), falsely represents to a Federal Firearms Licensee that he or she is purchasing a firearm for him- or herself, when in fact the firearm is being purchased for someone else.

November 5, 2021. The third man in the car possessed another firearm that was linked to a homicide via NIBIN (the National Integrated Ballistics Information Network).

    **B. On November 3 and 4, 2021, BAXTER, JACKSON, and GROSS communicated by text about GROSS buying a Glock for BAXTER.**

    13.    On November 3, 2021, at 9:00 p.m., BAXTER, using phone number 513-XXX-1580, sent JACKSON, who was using phone number 513-XXX-6543, a screenshot showing that a Glock 23 Gen5 .40 caliber pistol was on sale at Shoot Point Blank Cincy West for $589.99.[5] (See below.) BAXTER then wrote to JACKSON: "Send this to your dude that's what we wan."



---

[5] I know BAXTER was using 513-XXX-1580 because his phone was seized from his person in December 2021 and he consented to a search of it. I know JACKSON was using 513-XXX-6543 because the phone number is linked to him in Cincinnati Police Department records; because text messages link JACKSON to the nickname "Strike Tyson," and the Facebook page under that name appears to depict JACKSON; and because text messages between that phone and GROSS on November 3-5, 2021, and corroborating surveillance, show that the phone is used by him.

14. The next morning, November 4, 2021, JACKSON forwarded the screenshot to GROSS. GROSS responded, "I'm tryin to break free bro.. how long is that sale on?" At 2:07 p.m., JACKSON responded, "Call me." Based on the context of the above messages, my training and experience investigating straw purchases, as well as the information I describe below, I believe that, when BAXTER sent the screenshot to JACKSON and said, "Send this to your dude that's what we wan," he meant that he wanted JACKSON to ask GROSS to purchase the Glock pistol. When GROSS wrote back to ask how long the "sale" would be going on, I believe, based on context, that he was asking about the sale price of the Glock ($589.99), as pictured in the screenshot.

**C. At some point on November 4, 2021, JACKSON tried to buy two pistols from Shoot Point Blank Cincy West, but the sale was denied due to his recent drug arrests.**

15. Later the same day, November 4, 2021, at 4:09 p.m., BAXTER followed up with JACKSON by text, asking, "Wha they talm bout w the skrapps[?]" Based on the context of these messages, as well as my training and experience interpreting coded or slang language used by criminals, I believe "skrapps" may have been a misspelling of "straps," a common slang term for guns.

16. JACKSON responded, "He ain't called me yet"—which, based on context and the information I describe below, I believe was a reference to GROSS not yet responding about going to Shoot Point Blank Cincy West. BAXTER wrote back: "IM fina lose it[.]" JACKSON responded, "Man stay at the house! They denied me. I'm waiting on him."

17. I believe that JACKSON's statement that he was "denied" was a reference to the fact that, at some point on November 4, 2021, as shown by a Form 4473 that I have reviewed, JACKSON tried to buy a .40 caliber Glock 22 Gen5 Pistol and a Springfield Armory 10mm

pistol at Shoot Point Blank Cincy West, but the sale was denied after JACKSON's background check came back as "denied." Surveillance footage from this attempted purchase is not available.

**D. On November 5, 2021, JACKSON picked up GROSS and took him to Shoot Point Blank, where GROSS purchased two Glock pistols and three boxes of Hornady hollow-point ammunition.**

18. The next morning, November 5, 2021, at about 5:57 a.m., JACKSON texted GROSS: "I need you brother." Then, at 10:29 a.m., JACKSON wrote to GROSS: "I'm outside." GROSS responded, "Here I come."

19. Surveillance footage shows that, at about 10:59 a.m., JACKSON and GROSS arrived at Shoot Point Blank Cincy West in a gray Nissan SUV. Consistent with the text messages above, which suggest that JACKSON came to pick up GROSS, GROSS got out of the passenger side and walked into the store. The image on the left is GROSS's driver's license photo, and the image on the right is from the surveillance:



20. Another fact corroborating that the person pictured on the surveillance footage is GROSS is that, as described below, he later filled out an ATF Form 4473 in his name.

7

21. A few minutes later, JACKSON got out of the car driver's seat and entered the store. The image on the left below is JACKSON's driver's license photo; the image on the right is from the surveillance:



22. The surveillance footage shows that the two men met in a corner of the store near some firearm accessories. They then appeared to talk to each other and to look at some merchandise with the help of one of the store's associates, as shown below.



23. At about 11:10 a.m., JACKSON walked into an aisle that appears to contain boxes of ammunition. The camera does not fully capture the aisle, but it does show that

8

JACKSON stopped in front of a set of light-brown boxes and that he picked up one of the boxes with his left hand, as shown below:



24. Surveillance footage shows that, at about 11:13 a.m., JACKSON left the store and went back out to the SUV. GROSS continued talking with another associate.

25. At approximately 11:17 a.m., JACKSON texted GROSS a picture of boxes of ammunition on a shelf—apparently the same brown boxes of ammunition that the surveillance footage captured him looking at moments before. The picture message depicted Hornady Critical Defense 40 S&W ammunition, which is a hollow-point ammunition with a red tip inside the hollow-point bullet to aid in expansion.



9

26. Records from Shoot Point Blank Cincy West show that GROSS—consistent with what BAXTER had requested—bought two Glock 22 .40 caliber pistols, with serial numbers MAB616 and AFWA780, respectively. The records also show that GROSS bought three boxes of the same ammunition JACKSON had sent him a picture of: Hornady Critical Defense 40 S&W ammunition.

27. Based on my training and experience, I know that ATF Form 4473 – Firearms Transaction Record is the standard document that ATF FFLs use to document the transfer of a firearm from an FFL to an individual purchaser. Section A of ATF Form 4473 is required to be completed by the purchaser of the firearm. Question 11.a asks the purchaser, "*Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you. Exception: If you are picking up a repaired firearm(s) for another person, you are not required to answer 11.a and may proceed to 11.b. (See Instructions for Question 11.a.).*"

28. A review of the relevant ATF Form 4473s showed that GROSS checked "Yes" in the checkbox next to Question 11.a. to confirm that he was the actual transferee/buyer of the two Glock firearms he purchased from Shoot Point Blank Cincy West on November 5, 2021.

29. At about 11:31 a.m., GROSS left the store and got into the passenger seat of the SUV, which drove away.

**E. About an hour later, GROSS bought two more firearms from another FFL.**

30. Later the same day, at about 12:11 p.m., GROSS bought two more firearms at American Trading LLC, another FFL in Cincinnati. The ATF Form 4473 shows that GROSS bought a Ruger 57 pistol, serial no. 643-11803 and a Glock 17C pistol with serial no. NUY716. Surveillance footage is not available from this purchase.

31. The ATF Form 4473 associated with this transaction shows that, as with the purchases GROSS made earlier in the day, he affirmed that he was the true purchaser of the firearms.

32. Based on my training and experience, purchasing firearms at multiple FFLs in a short period, and especially on the same day, rather than simply purchasing all of the firearms in one transaction, is characteristic of straw purchasing and firearms trafficking. Individuals hoping to avoid arousing suspicion by buying a large quantity of firearms at on FFL commonly try to make purchases at multiple stores.

33. At 11:17 p.m. on the night of GROSS's purchase of the four firearms, November 5, 2021, JACKSON texted BAXTER: "I got Brodie." Seconds later, he corrected his text, writing "It*". Based on the context described above, I believe "it" was a reference to the firearm that GROSS, at JACKSON's direction, had bought for BAXTER. BAXTER responded with a smiley face.

F. **Two of the four firearms GROSS bought on November 5, 2021, were recovered in the possession of others—including BAXTER—less than a month later.**

34. On December 1, 2021, Cincinnati Police Department (CPD) officers and ATF agents saw three men leaving an apartment building on Hull Avenue in Cincinnati. As the men approached a parked car, one adjusted the top of his pants, revealing the imprint of a firearm partially concealed in his waistband. All three individuals then got into a 2006 silver Honda Accord.

35. The silver Accord had Ohio license plate JAV2650 displayed; however, this plate returned to a different vehicle. Shortly thereafter, CPD executed a traffic stop on the car and identified three men inside: (1) the driver, BAXTER; (2) a front seat passenger, J.F.; and (3) the rear passenger, E.F.

36. Under the driver's seat, where BAXTER had been sitting, officers found one of the Glocks GROSS had bought on November 5, 2021 (serial no. AFWA780). It was loaded with the same type of ammunition that GROSS had bought. BAXTER waived his Miranda rights and said he had bought the firearm "from an adult" and that he had had it for "like a week."

37. Under the rear of the driver's seat, within reaching distance of E.F., officers found the other Glock GROSS had purchased in the same transaction, with serial no. MAB616. E.F. waived his Miranda rights and said the Glock firearm was his.

38. A third firearm, a loaded Glock 19, was found within reaching distance of J.F., who admitted to possessing it. This firearm was later linked to a homicide via NIBIN.

39. Based on my training and experience, I know that a "time to crime" of less than a month—i.e., a period of less than a month between when a firearm was purchased and when it is recovered in the hands of a criminal—is characteristic of firearms trafficking and of "straw" purchasing.

**G. Additional evidence suggests that JACKSON has made other straw purchases in the past.**

40. On November 29, 2020, JACKSON completed a multiple sale firearm transaction at Shoot Point Blank Cincy West, located at 7266 Harrison Avenue, Cincinnati, OH 45247. JACKSON purchased six pistols during the same transaction, including two Smith & Wesson SD9VE 9mm pistols, one with serial number FCX4600 and the other with serial number FCX4600.

41. Two of the six firearms JACKSON bought on November 29, 2020, were recovered from other individuals involved in weapons offenses. Specifically, on December 18, 2020—19 days after JACKSON's November 29, 2020, purchase—the firearm with serial number FCX4600 was recovered from a juvenile, M.W. Juveniles are prohibited from possessing firearms under

12

Ohio law. As noted above, a "time to crime" of less than a month is characteristic of firearms trafficking and of "straw" purchasing.

42. Additionally, on July 5, 2021—218 days after JACKSON's purchase at Shoot Point Blank Cincy West—N.P. was found in possession of the firearm JACKSON had bought with serial number FCX4707. In connection with this incident, N.P. was charged with and convicted of Carrying Concealed Weapons in the Hamilton County (Ohio) Court of Common Pleas. Although longer than a month, in my experience a "time to crime" of seven months is still a relatively short period that is consistent with a straw purchase.

## CONCLUSION

43. Based on the foregoing, I respectfully request that the Court issue the proposed criminal complaint and arrest warrants.

Respectfully Submitted,

_____
William D. Crayner
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Subscribed and sworn to before me via FaceTime videoconference on May ___31___, 2022.

_____
HON. STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

13